UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

UNITED STATES                               CRIMINAL ACTION

VERSUS                                      NO: 13-86

DONALD RICHARDSON                           SECTION: R(3)


ORDER AND REASONS

Before the Court are the government's motions to strike three of defendant's subpoenas *duces tecum* directed to the Terrebonne Parish Sheriff's Office.   For the following reasons, the government's motion is GRANTED IN PART and DENIED IN PART.


I.    **Factual Background**

Defendant is charged with two counts of distributing cocaine base ("crack") in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C).   The charges arise from two controlled sales of crack that defendant allegedly made on March 17, 2011 and March 23, 2011 to Alton Celestine, a confidential informant working with the Terrebonne Parish Sheriff's Office.

The government moves the Court to quash three of the defendant's subpoenas directed at the Terrebonne Parish Sheriff's Office.   The first subpoena seeks the "entire Criminal Informant (CI) file on the following person: Alton Celestine . . . This file

should contain the following: 1. Information regarding monetary or judicial benefits, or any and all recommendations for benefits received by Alton Celestine in exchange for his cooperation with the Terrebonne Parish Sheriff's Office; 2. The names of all cases for which Alton Celestine provided information to the Terrebonne Parish Sheriff's Office; 3. the names of all law enforcement who worked with Alton Celestine as a CI; and 4. A Training or Operations Manual that the Terrebonne Parish Sheriff's Office uses to guide their policies and procedures regarding working with CIs."[1]  The second subpoena requests a "police report associated with the arrest of any and all defendants with the last name Harris that were arrested between the dates of January 1, 2011 and January 1, 2012 by either Narcotics Agent Joe Renfro or Russell Madere."[2] The final subpoena requests three police reports and accompanying crime lab results relating to the November 3, 2011 arrest of Christine Harris.[3]  Defendant argues that the government lacks standing to challenge the subpoenas and that, even if the government does have standing, the subpoenas are nevertheless proper under Fed. R. Crim. P. 17.

   At the request of the parties, the Court conducted an *in camera* review of the subpoenaed documents.

---

[1] R. Doc. 66 at 1-2.

[2] R. Doc. 68-1.

[3] R. Doc. 68-2.

## III. Discussion

### A.    Rule 17 Subpoenas

Federal Rule of Criminal Procedure 17 governs the use and issuance of subpoenas in criminal cases.  The Rule provides in pertinent part:

> **(c) Producing Documents and Objects.**
> **(1) In General.**  A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates.  The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence.  When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them.

Fed. R. Crim. P. 17.

Rule 17(c) was implemented to "expedite the trial by providing a time and place before the trial for the inspection of the subpoenaed materials." *Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951).  Rule 17(c) was designed as a time-saving mechanism, and was "not intended to provide an additional means of discovery."  *Id.*  Accordingly, the burden is on the movant to demonstrate: (1) that the requested documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by the exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that

the application is made in good faith and is not intended as a general "fishing expedition." *United States v. Nixon*, 418 U.S. 683, 699-700 (1974); *see also United States v. Arditti*, 955 F.2d 331, 345 (5th Cir. 1992)(finding that a Rule 17(c) subpoena can be authorized only if requested documents are relevant, admissible, and requested with sufficient specificity). If the requisite showing is made, "the court may permit the parties and their attorneys to inspect all or part of" the subpoenaed documents. Fed. R. Crim. P. 17(c).

### B. The Government's Standing

Defendant argues that the government does not have standing to challenge subpoenas issued to the Terrebonne Parish Sheriff's Office. The Court finds defendant's argument to be without consequence; regardless of whether the government has standing, the Court is obligated under Rule 17 to assess each subpoena for compliance with the *Nixon* factors. *Bowman Dairy Co. v. United States*, 341 U.S. 214, 221 (1951) ("The burden is on the court to see that the subpoena is good in its entirety and it is not upon the [subpoenaed party] to cull the good from the bad."); *United States v. Hankton*, No. 12-1, 2014 WL 688963, at *2 n.1 (E.D. La. Feb. 21, 2014).

### C. The Alton Celestine Subpoena

The government argues that defendant's subpoena directed at the Terrebonne Parish Sheriff's Office for Alton Celestine's

confidential informant file should be quashed because enforcement of the subpoena "would infringe on a qualified law enforcement privilege which protects investigative files in ongoing criminal investigations."[4]

The Fifth Circuit has recognized "a qualified privilege protecting investigative files in an ongoing criminal investigation." *In re U.S. Dep't of Homeland Sec.*, 459 F.3d 565, 568 (5th Cir. 2006). When the government asserts the privilege, "the district court should review the documents at issue *in camera* to evaluate whether the law enforcement privilege applies to the documents at issue." *Id.* at 570. In making the determination, the Court must balance "the government's interest in confidentiality against the litigant's need for the documents." *Coughlin v. Lee*, 946 F.2d 1152, 1160 (5th Cir. 1991).

Here, Court finds that defendant's need for the subpoenaed documents outweighs the government's interest in confidentiality. As an initial matter, the government concedes that Alton Celestine is no longer functioning as a confidential informant for the Terrebonne Parish Sheriff's Office. *See In re U.S. Dep't of Homeland Sec.*, 459 F.3d at 571 (holding that "[s]everal types of information probably could not be protected, including documents pertaining to: (1) people who have been investigated in the past but are no longer under investigation"); *Am. Civil Liberties Union*

---

[4] R. Doc. 66 at 3.

*v. Finch*, 638 F.2d 1336, 1344 (5th Cir. 1981) ("Even the files of active law enforcement agencies lose their privileges after particular investigations become complete."). Additionally, the Court has reviewed the subpoenaed documents *in camera* and finds that the documents do not contain any information that might jeopardize an ongoing criminal investigation. Accordingly, the Court denies the government's motion to quash the subpoena.

   **D.   The "Harris Subpoenas"**

   The government also moves to quash two of defendant's subpoenas seeking records relating to the Terrebonne Parish Sheriff's Office's investigation or arrest of any individual with the last name Harris. More specifically, the government moves to quash defendant's subpoenas seeking (1) police records relating to the arrest of "any and all defendants with the last name Harris that were arrested between the dates of January 1, 2011 and January 1, 2012 by either Narcotics Agent Joe Renfro or Russell Madere;"[5] and (2) three police reports and accompanying lab results for the November 3, 2011 arrest of Christine Harris. The Court held a hearing in chambers to determine the relevancy of the subpoenaed records. The defense proffered two different theories of relevancy. Defendant first argued that someone with the last name Harris was somehow related to the charges against defendant. The

_____

   [5] R. Doc. 68-1.

6

defendant's second theory of relevancy is that the arrest report for defendant might have been "cut-and-pasted" from other arrest reports and that such "information . . . is fodder for cross-examination."[6]  In response, the government contends that there is no connection between anyone with the last name Harris and this case.  The government further argues that the reference to a Harris in defendant's police report is nothing more than a typographical error.[7]

Having reviewed the subpoenaed records *in camera*, the Court finds that the Harris subpoenas seek information that is not relevant to this case.  Indeed, the subpoenaed documents relate to three arrests of three different individuals on July 28, 2011, for distribution of crack and marijuana; on September 1, 2011, for threatening a police officer; and on November 3, 2011, for drug racketeering and prostitution activity, respectfully.  There is no reference to the defendant or the confidential informant, Alton Celestine, in any of the subpoenaed documents, and defendant has not provided the Court with any basis to substantiate its contention that someone named Harris was involved in this case.  Moreover, all of the documents relate to Terrebonne Parish Sheriff's Office investigations or arrests that occurred at least

---

[6] R. Doc. 69 at 4.

[7] R. Doc. 68 at 4.  In addition, the officer who authored the report testified that the reference to "Harris" was a typographical error on his part.

four months after the alleged transactions in this case.  The Court also compared the police reports in this case with the subpoenaed records and finds no similarity in form or substance between the subpoenaed records and the police reports in this case.  Finally, when cross-examining the officer who authored the report, defense counsel did not engage in any questioning regarding the "cut-and-paste" theory that the defense asserted in its opposition to the government's motion to quash, but instead simply argued that if the officer made one mistake, he could have made others.

After reviewing the subpoenaed documents *in camera*, the Court finds that defendant has failed to establish the relevance of the documents.  The subpoenaed documents simply have no bearing on any issues in this case.  The Court will not permit defendant to engage in a fishing expedition in hopes of discovering a connection.  *See United States v. Butler*, 429 F.3d 140, 149 (5th Cir. 2005) (affirming district court's quashing of subpoena because defendant "failed to evoke any real relevance to the particular counts for which he was charged"); *United States v. Carriles*, 263 F.R.D. 400, 402 (W.D. Tex. 2009) ("If the moving party cannot reasonably specify the information contained or believed to be contained in the documents sought, but merely hopes that something useful will turn up, this is a sure sign that the subpoena is being misused."). Accordingly, defendant's two subpoenas requesting Terrebonne Parish Sheriff's Office's records pertaining to any individual with the

8

last name Harris are hereby quashed.

### E.   Defendant's *Giglio* Arguments

Prior to trial, defense counsel also argued that the government failed to fulfill its *Giglio* obligations by refusing to turn over the lab reports and photographs connected with the arrest of the confidential informant, Alton Celestine.  More specifically, defense counsel argued that the factual basis the government did produce failed to include that heroine was found in defendant's possession and that the government reduced the quantity of cocaine base charged in the indictment so as to avoid triggering a statutory enhancement.  The Court ordered production of the report and pictures and reviewed the documents *in camera*.  After reviewing the documents, the Court finds that the defendant's arguments are without merit.  There is no indication in any of the documents that heroine was found in Mr. Celestine's possession, and the factual basis the government did produce accurately summarizes the quantity of cocaine base found on Mr. Celestine.  Finally, the pictures are cumulative of other evidence already in defendant's possession.[8] The Court therefore concludes that defendant's arguments regarding the governments failure to abide by its *Giglio* obligations are

---

[8] The defendant also subpoenaed the two lab reports from the Terrebonne Parish Sheriff's Office.  Although the Court found that these documents were not *Giglio* material, it ordered them produced by virtue of the subpoena.

without merit.

## IV.  Conclusion

For the foregoing reasons, defendant's subpoenas requesting records pertaining to any defendants named Harris are hereby quashed. The Court DENIES the government's motion to quash defendant's subpoena for Terrebonne Parish Sheriff's Office's records concerning Alton Celestine.

New Orleans, Louisiana, this 18th day of November, 2014.

_Sarah Vance_

SARAH S. VANCE

UNITED STATES DISTRICT JUDGE

10